Rhonda L. ROSENBERRY, individually and as Parent and Natural Guardian of Alexander W. Prince, a Minor, Appellant

v.

Tanya EVANS, Mitchell King and Robert Miller, Appellees

v.

Dale Cannon and Linda Cannon, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 14, 2012.

Filed April 23, 2012.

Erin K. Rudert, Pittsburgh, for appellant.

John F. Deasy, Pittsburgh, for Miller, appellee.

BEFORE: BOWES, OLSON, and PLATT*, JJ.

OPINION BY BOWES, J.:

Rhonda L. Rosenberry ("Mother"), acting individually and as parent and natural guardian of Alexander W. Prince, a minor, appeals from the trial court's order granting summary judgment in favor of Robert Miller ("Landlord")[1] in this negligence action arising from a dog bite. After a thorough review of the record and the applicable law, we affirm.

The relevant facts underlying this appeal are as follows. On June 15, 2008, then ten-year-old Alexander accompanied his grandparents, Dale and Linda Cannon, to premises leased by Mitchell King from Landlord. The purpose of their visit was to choose a puppy from the litter of puppies born just hours before to Raven, a pit bull owned by Tanya Evans, Mr. King's girlfriend. Ms. Evans placed a newborn puppy with part of its umbilical cord still attached in Alexander's lap. Deposition of Linda Cannon, 9/17/09, at 16–17. First, Raven came near the child, licking his knee and hand. *Id.* They were face to face, each looking down at the puppy, and then they both looked up at the same time. At that point, Raven "had a hold of his nose." *Id.* Ms. Evans grabbed the dog, the child pulled back, and "there was a piece missing out of Alex's nose…." *Id.*

Mother commenced a civil action against Landlord, Mr. King, and Ms. Evans, alleging that their negligence resulted in serious bodily injury to Alexander. Mother averred that the dog had dangerous propensities, that Landlord was in control of the property where the injury occurred, and that he knew or should have known of the dog's dangerous propensities. She asserted that he was negligent in permitting Mr. King and Ms. Evans to keep a vicious dog on the premises and in failing to warn others of the danger. Landlord denied that, at the time of the incident, he controlled, managed, or supervised the property. Miller's Answer and New Matter and Cross–Claim, 10/28/10, at ¶ 7. Furthermore, he denied that the dog was kept on the property or that he permitted Ms. Evans and Mr. King to keep the dog on the premises. *Id.* at ¶¶ 10, 12. Finally, he denied constructive or actual knowledge that the dog had any dangerous or vicious propensities. *Id.* at ¶ 14. He filed cross-claims against Ms. Evans and Mr. King seeking contribution and indemnification pursuant to Pa.R.C.P. 1031.1, and alleged that they were solely liable to Mother, or jointly and severally liable. Landlord joined Dale and Linda Cannon, the child's grandparents, as additional defendants.

The parties engaged in discovery, and thereafter, on December 17, 2010, Landlord filed a motion for summary judgment. He alleged that Mother had failed to adduce evidence that the dog had dangerous propensities or that Landlord had actual knowledge of any dangerous propensities of the dog that would give rise to a duty on his part to control the animal or protect the minor child. Mother responded, filed a brief in opposition and a supplement to

---

* Retired Senior Judge assigned to the Superior Court.

1. We have jurisdiction of this appeal from an interlocutory order because the trial court made an express determination pursuant to Pa.R.A.P. 341(c), that an immediate appeal would facilitate resolution of the entire case.

the record pursuant to Pa.R.C.P. 1035.1. After oral argument, the trial court granted summary judgment in favor of Landlord, finding both that the dog did not have a dangerous propensity and that Landlord had no knowledge of any alleged dangerous propensity. This appeal followed.

Mother presents three questions for our review.

I. Whether the lower court erred and abused its discretion in finding that a genuine issue of material fact did not exist as to (A) the "dangerous propensities" of the pit-bull dog in question and (B) Defendant/Appellee, Robert Miller's knowledge of the dangerous propensities of this animal, when such determination was based purely on oral testimony of non-adverse parties?

II. Whether the lower court erred and abused its discretion in finding that there was no evidence that the pit-bull dog in question was dangerous?

III. Whether the lower court erred and abused its discretion in finding that there was no evidence that defendant/Appellee, Robert Miller, was aware that the pit-bull dog in question was a dangerous animal?

Appellant's brief at 6.

■ "In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court." *Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104 (Pa.Super.2011). We may reverse the entry of a summary judgment only where the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. *Payne v. Commonwealth Department of Corrections*, 582 Pa. 375, 871 A.2d 795, 800 (2005). In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Where our inquiry involves solely questions of law, our review is *de novo. Id.*

■ Typically, in negligence actions arising from the conduct of animals, the animal's owner is the person responsible for injuries to others caused by his or her pet. Pennsylvania, however, does not impose absolute liability upon dog owners for injuries occasioned by their dogs. *McCloud v. McLaughlin*, 837 A.2d 541 (Pa.Super.2003). Proof of the owner's negligence is required. *Id.*

■ In order to establish a cause of action in negligence against a landlord for injuries caused by his tenant's dog, it must be proven that the landlord owed a duty of care, that he breached that duty, and that the injuries were proximately caused by the breach. *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458 (1998). A landlord out of possession is not liable for attacks by animals kept by his tenant on leased premises where the tenant has exclusive control over the premises. However, a duty to use reasonable care will attach to prevent such injuries if the landlord has knowledge of a dangerous animal on the rented premises and if the landlord enjoyed the right to control or remove the animal by retaking the premises. *Palermo v. Nails*, 334 Pa.Super. 544, 483 A.2d 871 (1984).

In *Palermo*, tenant's dog attacked and bit a seven-year-old child. The tenant was the landlord's nephew and lived on her property rent-free. Eighteen months prior to the attack, a police officer had advised the landlord to keep the dog constrained because it had attacked and bitten a child. The parents filed a negligence action against the landlord and the tenant

and the jury returned a verdict for the parents, finding the landlord, the tenant, and the child negligent. Landlord's post-trial motions, alleging that she owed no duty to the minor child, were denied, and this Court affirmed. We found a duty on the part of the landlord arising from her actual knowledge of the dog's vicious propensities and her almost exclusive control over the premises.

■ Actual knowledge of a dog's dangerous propensities is required before a duty is imposed upon a landlord to protect against or remove an animal housed on rental property. In *Underwood ex rel. Underwood v. Wind*, 954 A.2d 1199 (Pa.Super.2008), we granted a new trial to the defendant landlord based on a jury instruction that incorrectly advised the jury that she could be liable if she knew *or should have known* of the tenant's dog's violent propensities. Relying upon *Palermo*, we held that "by inserting the phrase 'or should have known' when instructing the jury on the standard of care to be applied to an out-of-possession landlord when considering her liability for injuries caused by a dog with violent propensities[,]" the court had erred. *Underwood, supra* at 1208. We noted that the landlord's actual knowledge of the dog's dangerous propensities was a prerequisite to imposition of a duty.

We first address the question of whether there was no genuine issue of material fact that Raven did not have any dangerous characteristics. Instantly, the trial court relied upon a record replete with testimonial evidence that Raven had a gentle disposition and wonderful temperament as the basis for its finding that the dog did not have a dangerous propensity. Ms. Evans and Mr. King both testified that Raven was not aggressive with people or animals and Mr. King offered that the dog "didn't have a mean bone in its body." King

Deposition, 9/17/09, at 24. Dale Cannon, the minor's grandfather, described the dog as friendly and obedient. It did not growl or bark. Linda Cannon played with the dog and it kissed her hands. Even after the dog had her puppies, her disposition did not change and she was not mean, nasty, or guarded. Ms. Evans denied that Raven had ever attacked or bitten another dog or person. By all accounts, the bite herein was involuntary and nonaggressive.

Mother contends first that the trial court violated the *Nanty–Glo* rule in relying solely upon the oral testimony of Ms. Evans, Mr. King and the Cannons to find that the dog did not have a dangerous propensity. In *Borough of Nanty–Glo v. American Surety Co. of New York*, 309 Pa. 236, 163 A. 523, 524 (1932), our Supreme Court held that a directed verdict could not be entered where the moving party relied exclusively on oral testimony, either through affidavits or deposition, to establish the absence of a genuine issue of material fact. *See Garcia v. Savage*, 402 Pa.Super. 324, 586 A.2d 1375, 1377–78 (1991). The *Nanty–Glo* rule was reaffirmed and expanded to encompass summary judgment in *Bremmer v. Protected Home Mut. Life Insurance Co.*, 436 Pa. 494, 260 A.2d 785 (1970); *see also Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989).

The rule provides that, "[h]owever clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts[.]" *Nanty–Glo, supra* at 524. An exception to the rule has been recognized where the moving party relies upon the uncontradicted testimony of another party, even a co-defendant, who is an adverse party and equally liable to the plaintiff. *Askew By*

*Askew v. Zeller,* 361 Pa.Super. 35, 521 A.2d 459 (1987).

█ Mother alleges that Ms. Evans, Mr. King, and the Cannons are not adverse parties as to the Landlord. Despite the fact that Landlord filed cross claims against Ms. Evans and Mr. King, and joined the Cannons as additional defendants, Mother insists that the parties' interests align with Landlord's as all would be exculpated by a finding that the dog did not have dangerous propensities. She contends that the credibility and potential bias of these witnesses must be submitted to the jury under the *Nanty–Glo* rule.

Mother relies upon our decision in *Johnson v. Johnson,* 410 Pa.Super. 631, 600 A.2d 965, 969 (1991), where we faced the question of whether codefendants were adverse for purposes of *Nanty–Glo.* In that case, there were multiple similarly-situated co-defendants and each filed for summary judgment relying upon his co-defendants' testimony, as well as his own testimony, to support the common argument that he owed no duty to the decedent. We held that as to each other, the defendants were not the type of adverse parties that could overcome the *Nanty–Glo* rule as they were not antagonistic to each other. Furthermore, the fact that some defendants filed cross-claims against other defendants was not dispositive of whether they were adverse. "In order to rely on the testimony of co-defendants, the moving party must demonstrate that there is actual adversity among the defendants, so as to make any testimony by the co-defendant 'unconditional surrender.'" *Johnson, supra* at 969 (partially quoting *Garcia, supra* at 1378 n. 3).

█ We find Mother's reliance upon *Johnson* persuasive with regard to the issue of the vicious or dangerous propensities of the dog. As a finding of the dog's dangerous propensities was a prerequisite to liability against Landlord as well as his co-defendants and the additional defendants, the parties had identical aligned interests. The trial court relied upon the uncontradicted oral testimony of Ms. Evans, Mr. King, and the Cannons in concluding that the dog did not have violent tendencies. "Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury." *Penn Center House, Inc. v. Hoffman, supra* at 903 (quoting Goodrich–Amram, 2d, § 1035(b):4 at 434–35). As this was not the testimony of parties adverse to Landlord on this issue, we find that the *Nanty–Glo* rule applies and the trial court erred in finding no issue of material fact based solely on this testimony.[2]

█ Furthermore, we also find merit in Mother's alternative argument that there was sufficient evidence of the dangerous propensities of the dog to raise genuine issues of material fact and preclude summary judgment on this issue. It was undisputed that the dog had a tic, or an involuntary spasm, which intermittently caused it to clench its teeth in a biting motion. The dog's mouth would open and close quickly and one could hear a clicking of the dog's teeth as they came together. Raven had displayed this characteristic since she was a puppy. In light of the fact that the eyewitnesses to the events of June 15, 2008, saw no agitation or aggressiveness on the part of the dog prior to it

---

**2.** This issue-by-issue approach to the *Nanty–Glo* analysis seems appropriate in the summary judgment setting, which is calculated to dispose of some or all of the issues or some or all of the parties.

grasping the child's nose, Mother posits that the tic may have been responsible for the dog's contact with the child's nose and subsequent injury. Landlord, the Cullens, Ms. Evans and Mr. King contended that the involuntary tic was not a dangerous propensity. Landlord suggests that the tic was merely "an involuntary nonaggressive muscle spasm." Appellee's brief at 14.

Our High Court has defined a dangerous or vicious propensity broadly. A dangerous propensity includes "a propensity or tendency of an animal to do any act that might endanger the safety of the person and property of others in a given situation." *Groner v. Hedrick*, 403 Pa. 148, 169 A.2d 302, 303 (1961) (citing Restatement (Second) of Torts § 518(1)). In *Groner*, the Court recognized that a large overly-friendly dog that jumps onto people may be as dangerous as a vicious one. Our Supreme Court ruled, "[T]he law makes no distinction between an animal dangerous from viciousness and one merely mischievous or dangerous from playfulness," and the animal's motivation or "the mood in which it inflicts harm is immaterial." *Id.Accord Clark v. Clark*, 207 Pa.Super. 193, 215 A.2d 293 (1965).

In the instant case, while there is no evidence that Raven was vicious, it was undisputed that she had a tic that caused her to clench her teeth in a biting motion. The parties disagree about the reasonable inferences to be drawn from this undisputed fact. Mother draws the inference that the clenching motion rendered the·dog dangerous as evidenced by the fact that it resulted in a disfiguring injury to Alexander. The other parties characterize the behavior as an involuntary muscle spasm in a gentle dog. As this was summary judgment, the inferences should have been drawn in favor of Mother, the party opposing the motion. Thus, there was sufficient evidence from which a jury could reasonably infer that the dog displayed a characteristic, even though non-aggressive, that rendered it dangerous. Summary judgment on this basis, therefore, was inappropriate. *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d 899, 902 (2007).

Despite our conclusion that there are genuine issues of fact regarding whether Raven had a dangerous propensity, our inquiry does not end there. In order to establish that Landlord had a duty, Mother had the burden of offering some evidence that he had actual knowledge of the dog's muscle spasm or other dangerous propensity and sufficient control over the leased premises to prevent the injury.[3] To withstand summary judgment, Mother could not rely solely on her pleadings. *Richland Mall Corp. v. Kasco Const. Co., Inc.*, 337 Pa.Super. 204, 486 A.2d 978, 981 (1984).

Again, Mother challenges the trial court's reliance upon the testimony of Landlord, Ms. Evans, Mr. King, and the Cannons in finding that Landlord had no knowledge as a violation of *Nanty–Glo*. Mother insists that these parties are not adverse because they are all tenants of Landlord, and notes Mr. King and Dale Cannon also occasionally performed odd jobs for Landlord.

■ Contrary to our disposition of the dangerous propensity issue under *Nanty–Glo*, we find no application of the rule to the issue involving Landlord's knowledge. As to that issue, Landlord's legal interest is adverse to that of the co-defendants and additional defendants. A finding that Landlord did not know of the dog's allegedly dangerous propensity increases the potential exposure of the co-defendants

---

3. Landlord's control over the leased premises   was not an issue on summary judgment.

and additional defendants. Moreover, the fact that Mr. King, Ms. Evans and the Cannons are tenants of Landlord, and that Mr. King and Dale Cannon occasionally perform minor tasks for Landlord to offset debts, does not render them non-adverse parties for purposes of *Nanty–Glo* as their legal interests are adverse in the present context. Arguably, the Cannons' relationship as grandparents of the injured child would militate in Mother's favor rather than that of the Landlord.

■■■ In addition, based upon our review of the record, the trial court did not rely solely upon oral testimony in support of summary judgment on the issue of Landlord's knowledge and thus, did not trigger *Nanty–Glo*. Instead, Landlord maintained, and the trial court agreed, that Mother failed to adduce facts sufficient to create a genuine issue of material fact as to his knowledge of the dog's dangerous propensities. Mother contends that the court erred in this regard as Landlord's knowledge can be inferred from the knowledge of Dale Cannon, or from Landlord's own direct observations of the dog, or rumors of the dog's reputation in the community. Appellant's brief at 26–27.

Mother characterizes Dale Cannon as an employee of Landlord and argues that his knowledge of the dog's dangerous propensities acquired while he was acting on behalf of Landlord must be imputed to Landlord. She asserts that Mr. Cannon first became aware of Ms. Evans' dog and its teeth clenching when he went to the King residence on Landlord's behalf to inspect the new door and floor that he had previously installed, and that knowledge was acquired within the scope of his agency.

Before a landlord will be charged with a duty, he must have actual knowledge that his tenant harbors a dog with dangerous propensities. *Palermo, supra.* Pennsyl-vania courts have not addressed whether imputed knowledge of an agent is sufficient to satisfy this actual knowledge requirement. Generally, the language of imputed knowledge is used in those situations involving the principal's liability for the conduct of the agent, which is not the case herein. *See* Restatement (Second) of Agency, § Scope.

■■■ We acknowledge that "[i]t is well settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, and therefore, knowledge of the agent is knowledge of the principal." *W.C.A.B. v. The Evening Bulletin*, 498 Pa. 219, 445 A.2d 1190, 1192 (1982). However, the agent's awareness of a given fact is not imputed to the principal if knowledge of the fact is not material to his duties to the principal. Restatement (Third) of Agency § 5.03; *Gresik v. PA Partners, L.P.*, 989 A.2d 344 (Pa.Super.2009). This distinction is critical herein.

Presently, we are not dealing with a corporate principal that can only act through its agents. Additionally, Mr. Cannon only did odd jobs for Landlord; he was not a property manager and, arguably, an independent contractor rather than an employee. Moreover, Mr. Cannon's awareness that Ms. Evans' dog had a spasm, knowledge acquired while he was performing a maintenance chore on the tenant's property, was not material to his duties for Landlord. Given the limited scope of his agency, we find it unreasonable to hold that Mr. Cannon had a duty to report to Landlord that a tenant's dog had a tic.

■■■ Moreover, knowledge of a dog's clenching issue is not equivalent to actual knowledge of a dangerous propensity. Even Mr. Cannon did not perceive the tic

as dangerous, maintaining that he never would have taken his grandson to see the puppies if he thought that the dog was dangerous.[4] Thus, if his knowledge of the tic was imputable to Landlord, Mr. Cannon's belief that the teeth clenching was harmless should likewise be imputed to Landlord.

Mother directs our attention to other jurisdictions where an agent's knowledge of a vicious dog was imputed to landlord. In *Rosseau v. Fintz*, 711 So.2d 1352 (Fla. App. 3 Dist.1998), the imputed knowledge of an agent was sufficient to subject the landlord to a duty. We note, preliminarily, that the rule in Florida is that a landlord may be liable for injuries resulting from an attack by a tenant's dog if the landlord knew, or **should have known,** that the tenant kept a vicious dog on the premises, and the landlord had the ability to control its presence.[5] That is not the law in Pennsylvania; constructive knowledge is not sufficient. *Underwood, supra.*

Furthermore, in *Rosseau,* the knowledge that was imputed to the landlord was that of the landlord's father who acted as manager of the property, frequently visited the duplex where numerous "Bad Dog" signs were posted to collect the rent, and often visited the specific area where the dogs were kept. This is in stark contrast to an occasional handyman such as Mr. Cannon who had no managerial duties with regard to the properties and whose work took him to the property on one occasion when the dog was present.

Nor is the instant factual situation comparable to the New York authorities relied upon by Mother. Therein, the tenants were the owners of the allegedly dangerous dogs and landlords provided their apartments free or at reduced rent in exchange for tenants' maintenance of landlords' property. The tenants' knowledge of their dogs' dangerous proclivities was imputable to landlords for purposes of establishing vicarious liability on the part of the landlords. *See Wilson v. Livingston,* 305 A.D.2d 585, 762 N.Y.S.2d 408 (N.Y.App.Div.2003); *Brundrige by Brundrige v. Howes,* 259 A.D.2d 895, 686 N.Y.S.2d 530 (N.Y.App.Div.1999). Vicarious liability is not at issue herein. Accordingly, we are not persuaded by the Florida, New York and Texas cases relied upon by Mother. On the facts before us, we find that the knowledge of Dale Cannon cannot be imputed to Landlord, and even if imputed, does not constitute knowledge of the dog's dangerous propensity.

■ Next, Mother points to Ms. Evans's testimony that Landlord came to collect the rent around the first of the month and "maybe two to three times" to speak to Mr. King when the dog was on the premises as support for the inference that he knew of the dog's tic. Deposition of Tanya Evans, 3/31/10, at 23, 25. While we agree that a landlord's knowledge of a dog's violent propensities may be inferred from the facts and circumstances, we find no reasonable basis for such an inference on the facts herein.

---

4. Mother testified at her deposition that her stepfather, Dale Cannon, told her several days after Alexander was bitten that while the dog resided at another location with Ms. Evans' former boyfriend, it had killed a neighbor's poodle. According to Mother, Mr. Cannon did not have this information prior to the events herein.

5. In *Vasques By and Through Rocha v. Lopez,* 509 So.2d 1241 n. 1 (Fla.App. 4 Dist.1987), relied upon by Mother, since there was sufficient proof of both actual and imputed knowledge, the court did not determine whether Florida Standard Jury Instruction 3.5(f), which provides that liability may be based on the landlord's knowledge or if the landlord "should have known," was in error.

The record suggests that the dog had been on the property only several weeks, no more than a couple of months, when this incident occurred. There was no evidence that the dog displayed any obvious vicious characteristics. Further, the record is devoid of any evidence that Landlord ever witnessed the occasional teeth clenching. Mr. King's rental was a trailer with surrounding property, not an apartment in a building. One cannot infer that in visiting the premises, Landlord would have been in such close proximity to the dog to see the tic displayed or hear the clenching sound produced. There were no dangerous dog signs posted on the property and no complaints of the dog's viciousness or dangerousness.

Such evidence of knowledge falls far short of the proof in *Palermo* where, prior to the incident, the landlord was apprised by police that the dog had attacked and bitten a child and where the landlord visited the property frequently and could observe the dog's viciousness. *Also cf. Dick v. Detwiler*, 1990 WL 305402, 1990 Pa. Dist. & Cnty. Dec. LEXIS 238 (Pa.C.P. 1990) (evidence that landlord mother knew her tenant daughter's dog would run loose and chase others, had witnessed such an incident, and erected a newspaper box because the paperboy, who had been chased by the dog, was afraid to deliver the paper to the front door was sufficient to present a factual issue for the jury). Absent from the record herein is any evidence of complaints brought to Landlord's attention, warning signs, prior attacks or any of the types of circumstances that have been generally held to constitute knowledge of a dog's dangerous or vicious propensities. *See* Am.Jur. Proof of Facts 2nd, Vol. 13, Stephen R. Pitcher, J.D., at 473.

■ Mother testified that after her son was injured, she heard rumors from Dale Cannon that the dog had previously attacked and killed a poodle. Deposition of Rhonda Rosenberry, 10/12/10, at 21–22. She contends that the fact that Landlord lived in the community should permit the inference that he also heard the rumors and, thus, knew the dog had violent propensities.[6]

Landlord counters that such testimony constitutes inadmissible hearsay and cannot be used to defeat summary judgment. *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 571 A.2d 398, 402 (1989). We agree. Mother had no personal knowledge of the facts underlying the rumors, and we will not rely upon inadmissible hearsay to find a genuine issue of material fact. If witnesses existed who could have substantiated the truth of the rumor, it was Mother's burden to establish those facts on the record. Even then, issues would remain as to Landlord's actual knowledge of Raven's alleged attack of the other dog.

Thus, viewing the evidence in the light most favorable to the nonmoving party, as we are obligated to do, we conclude that there are genuine issues of material fact regarding the dog's dangerous propensities. However, there was no evidence from which one could reasonably infer that Landlord had actual knowledge of the dog's alleged dangerous propensities to impose a duty of care. *Zator v. Coachi*, 939 A.2d 349, (Pa.Super.2007) (summary judgment proper when evidentiary record contains insufficient evidence of facts to make out a *prima facie* cause of action or defense). Hence, we affirm.

Order affirmed.

Judge PLATT Concurs in the Result.

---

**6.** Ironically, Mother seeks to use rumors she heard only after her son was bitten as the basis for an inference that Landlord would have heard them prior to this incident.