# Ward v. Edwards

C.P. of Lackawanna County, No. A06-02-63269-C.

*Robert W. Munley, III,* for plaintiff
*Michael Gallacher,* for defendant

MINORA, *J.,* April 5, 2013—Before this court is defendant Magdy Mekhail's ("defendant") motion for summary judgment. The matter is ripe for disposition and after review, the motion for summary judgment is denied and dismissed.

## FACTUAL SUMMARY

On August 27, 2011, as plaintiff Bob Ward ("plaintiff") was walking along a sidewalk to his apartment when he was allegedly bitten by a German shepherd owned by defendant's co-defendant Michael Edwards ("Edwards"). Both plaintiff and Edwards lived in the apartment. Edwards' dog resided there with him. Plaintiff suffered serious and permanent injuries from the attack. Defendant controlled the property where plaintiff was attacked. The property was managed by defendant's sister, Mary

Rizkalla ("Rizkalla"). Rizkalla allegedly became aware of the dog's dangerous propensities when she collected rent and arranged repairs, bills, and maintenance of the apartment. In her capacity as agent, Rizkalla informed her brother of the dog's dangerous propensities.

Rizkalla worked with her brother to manage the property by collecting rent and giving him the bills. *Rizkalla* dep. at 14; Mekhail dep. at 18-19. She threatened to evict tenants who did not pay their monthly rent and put notes on their door indicating the same. Rizkalla dep. at 15, 29. *Rizkalla* gave renters her phone number and they contacted her when there were problems with the building or repairs needed. *Rizkalla* dep. at 15, 29; Mekhail dep. at 18-19, 25-26. After tenants contacted Rizkalla with any problems, she communicated the issues to her brother, either by phone or during visits to him in New Jersey. *Rizkalla*, at 29-30; Mekhail dep. at 18-19, 25-26. Defendant would arrange to pay bills after Rizkalla informed him of costs. Rizkalla dep. at 30.

Testimony by defendant's tenants likewise indicates how Rizkalla served as his agent. Edwards, owner of the dog, testified that he rented his apartment from Mary Rizkalla and considered her landlord of the building. *Id.* at 9-10. Plaintiff said he gave his rent to Rizkalla and wrote his rent checks to defendant because Rizkalla told him to. *Id.* at 36-37. Edwards testified that he heard Rizkalla say she was property manager to a magistrate judge at an eviction hearing. *Id.* at 9-10, 21-22, 23, 36-37. These facts could support a jury's finding that Rizkalla was

defendant's agent.

A jury could also find that Rizkalla was aware of the dog's vicious propensities when she acted as defendant's agent and relayed this information to defendant in her capacity as his agent. While being deposed, Rizkalla, a veterinarian for 40 years, testified that she "did not like the idea of having the dog." Rizkalla dep. at 8, 23; See also, Mekhail dep. at 23-24. She also testified that she recognized the dog as unfriendly and unsociable before the incident at issue in this case. The first time the dog growled at her when she walked by it, she told Edwards to get rid of it. *Id.* at 21-22. Tenants voiced complaints about the dog to Rizkalla prior to its attack on plaintiff, and told her they tried to avoid the dog and would not go outside when they knew it was there. *Id.* at 23, 25-26. Edwards testified that Rizkalla told him other tenants were scared of the dog and complained about it to her. Edwards dep. at 16-17.

A jury could also find that Rizkalla communicated to defendant her awareness of the dog's dangerous propensities and tenants' complaints and reactions to it during the scope of her agency with him. Defendant testified that his sister informed him that the dog growled and threatened other tenants before the dog bite at issue in this case. Defendant also testified that Rizkalla informed him that she told Edwards several times before the incident to get rid of the dog. *Id.* at 29-30, 45. Defendant does not recall how long before the incident he and Rizkalla had these conversations. *Id.* at 45. However, Defendant's

testimony indicating his awareness of the dog through conversations with Rizkalla is conflicting; he says later in this same examination by counsel that he did not know prior to the incident that Edwards had a dog or about the dog's propensities. *Id.* at 51-52.

## PROCEDURAL SUMMARY

Defendant filed this motion for summary judgment on November 26, 2012 and filed a brief in support of the motion on January 2, 2013. Plaintiff responded to the motion on December 6, 2012. Plaintiff's brief in opposition to the motion for summary judgment was filed on January 22, 2013.

## ARGUMENT OF THE PARTIES

### *Defendant's Argument*

Defendant's argues he neither had knowledge of the dog's vicious propensities nor controlled the dog that attacked plaintiff. Defendant acknowledges that Pennsylvania permits recovery to an injured plaintiff when a landlord has actual knowledge of the animal's vicious propensities, but denies there is evidence to support that he knew the dog was dangerous. Defendant also argues that a landlord who does not control the premises cannot be liable for a tenant's dog, and that the Pennsylvania Dog Law does not apply to an individual who does not own or control a dog.

### *Plaintiff's Argument*

Defendant's motion for summary judgment should be

denied because Rizkalla's knowledge of the dangerous dog can be imputed to defendant, her principal. Rizkalla, as agent, was aware of the dog's dangerous propensities and allegedly relayed that information to defendant.

## LEGAL ANALYSIS

### Motion for Summary Judgment

When deciding a motion for summary judgment, the rules require that there be no genuine issues of material fact and that the moving party be entitled to judgment as a matter of law. *Deutsche Bank Nat. Trust Co. v. Smith,* 2010 WL 2940767 (Ct. Com. Pl. July 22, 2010) (citing Pa.R.C.P. 1035.2(1)); *Summers v. Certainteed Corp.,* 997 A.2d 1152, 1159 (Pa. 2010). A material fact is one that directly affects the outcome of the case. *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662, 664 (Pa. Super. 2000). A proper grant of summary judgment depends upon an evidentiary record that either: 1) shows that the material facts are undisputed; or 2) contains insufficient facts to make out a prima facie cause of action or defense and therefore, there is no issue to submit to jury. *Gateway Towers Condominium Ass'n v. Krohn,* 845 A.2d 855, 858 (Pa. Super. 2004); See also Pa.R.C.P. 1035.2.

In a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party and any doubt must be resolved against the moving party. *Deutsche Bank Nat. Trust Co. v. Smith,* 2010 WL 2940767, supra. A nonmoving party may not rely merely upon allegations in pleadings, or his answers to survive

summary judgment, but must set forth specific facts by way of affidavit or in some other way to demonstrate that genuine issue of material fact exists. *Banks v. Trustees of University of Pennsylvania,* 666 A.2d 329 (Pa. Super. 1995); See also Pa.R.C.P. 1035.2; *JP Morgan Chase Bank, N.A. v. Murray,* 2013 WL 1092850 (Pa. Super. 2013); *Aurora Loan Services LLC v. Molina,* 2008 WL 8745691 (Ct. Com. Pleas 2008).

*Landlord's Liability for Knowledge of Dangerous Animal on his Property*

In order to establish a cause of action in negligence against a landlord for injuries caused by his tenant's dog, it must be proven that the landlord owed a duty of care, breached that duty, and that the injuries sustained were proximately caused by the breach. *Rosenberry v. Evans,* 48 A.3d 1255 (Pa. Super. 2012) (citing *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998)). A duty to use reasonable care will attach to prevent such injuries if the landlord has knowledge of a dangerous animal on the rented premises and if the landlord enjoyed the right to control or remove the animal by retaking the premises. *Rosenberry v. Evans,* 48 A.3d 1255 (Pa. Super. 2012); *Palermo by Palermo v. Nails,* 334 Pa. Super. 544, 483 A.2d 871 (1984) (hereinafter *"Palermo"*); *cf. Feld v. Merriam,* 314 Pa. Super. 414, 461 A.2d 225 (1983). In Pennsylvania, a landlord out of possession is not liable for attacks by animals kept by his tenant on leased premises when the tenant has exclusive control over the premises. *Palermo,* 334 Pa. Super. 544, 483 A.2d 871 (1984) (citing *Collins*

*v. Otto,* 149 Colo. 489, 369 P.2d 564 (1982); *Denagy v. Doscher,* 40 Misc.2d 643, 243 N.Y.S.2d 575 (1963); *cf. Juarbe v. City of Philadelphia,* 288 Pa. Super. 330, 431 A.2d 1073 (1981)).

A landlord's knowledge of the presence of a dangerous animal can be inferred from facts and circumstances. *Rosenberry, supra; see also, Underwood ex rel. Underwood v. Wind,* 954 A.2d 1199, 1207 (Pa. Super. 2008). In *Palermo,* 334 Pa. Super. 544, 483 A.2d 871, the court found a landlord liable for appellee's injuries sustained from an attack by a tenant's vicious dog because the landlord, owner of the property, had almost exclusive control over the premises, had formed a close relationship with the tenant who owned the dog, visited the premises on numerous occasions, and allowed the dog's owner to live there with the dog even though the landlord had actual knowledge that the dog was vicious. The landlord could have taken steps to remove the dog and prevent injury to appellee, but did not. *Palermo,* 334 Pa. Super. at 547-48, 483 A.2d at 873-874. Facts supporting the landlord's actual knowledge of the dog's dangerous propensities in Palermo are similar to facts described in testimony in the present case regarding defendant's apparent knowledge of the dangerous dog, as will be discussed hereinafter.

*Imputing an Agent's Knowledge to the Principal in Landlord-Tenant Relations*

A landlord's knowledge of a dog's dangerous and vicious propensities can also be imputed to a principal

through an agent's knowledge of the dangerous dog.[1] In Rosenberry, the Pennsylvania Superior Court explained that an agent's knowledge of a dog's dangerous propensities can be imputed to the landlord. The court's rationale was that "knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal. . .and therefore, knowledge of the agent is knowledge of the principal." *Rosenberry*, 48 A.3d at 1262; *See Evening Bulletin*, 445 A.2d 1190 (Pa. 1982). "The key and distinctive feature of an agency relationship is the agent's power to affect the legal relationship of the principal with third parties: e.g., entering into contracts for them, buying or selling goods for them, or *subjecting the principal to tort liability." Wisiniski v. Brown & Brown Ins. Co. of Pa. 906 A.2d 571, 577* (Pa. Super. 2006) (emphasis added). However, knowledge of an agent acting in the scope of his authority is *not* imputed to the principal when the facts known by the agent are not material to his duties to the principal." *Id.* (emphasis added). In Rosenberry, because

the record suggest[ed] that the dog had been on the property only several weeks, no more than a couple months, when this incident occurred; there was no evidence that the dog displayed any obvious vicious characteristics; the record was devoid of any evidence that Landlord ever witnessed the occasional teeth

---

1. The Restatement (3d) of Agency Section 1.01 defines agency as "the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.

clenching; the dog owner's rental was for a trailer with surrounding property, not an apartment in a building, [hence] one could not infer that in visiting the premises, Landlord would have been in such close proximity to the dog to see the tic displayed or hear the clenching sound produced; [and] there were no dangerous dog signs posted on the property and no complaints of the dog's viciousness or dangerousness,

the Superior Court affirmed the trial court's order granting summary judgment. Based on the above facts, there was "no evidence from which one could reasonably infer that Landlord had actual knowledge of the dog's alleged dangerous propensities to impose a duty of care." *Id.* at 1264 (citing *Zator v. Coachi*, 939 A.2d 349, (Pa. Super. 2007) (summary judgment proper when evidentiary record contains insufficient evidence of facts to make out a prima facie cause of action or defense)).

*Nanty-Glo Rule: Testimony Alone is Not Sufficient for Motion for Summary Judgment*

Courts inquiring into a landlord's knowledge of a tenant dog's dangerous propensities on a motion for summary judgment have applied the "*Nanty-Glo*" rule to analyze whether there is a genuine issue of material fact as to the landlord's knowledge, when that knowledge is illustrated only through oral testimony. *See Rosenberry*, 48 A.3d at 1260 (Pa. Super. 2012). *Nanty-Glo* was recently applied by the Pennsylvania Superior Court in a case regarding a landlord's liability for a tenant's vicious dog in 2012. *Rosenberry v. Evans*, 48 A.3d 1255 (Pa. Super. 2012) (noting

*Nanty-Glo* was reaffirmed and expanded to encompass summary judgment) (internal citations omitted). In *Borough of Nanty-Glo v. American Surety Co. of New York,* 309 Pa. 236, 163 A. 523, 524 (1932), the Pennsylvania Supreme Court held that a directed verdict could not be entered where the moving party relied exclusively on oral testimony, either through affidavits or deposition, even if uncontradicted, to establish the absence of a genuine issue of material fact. *Nanty-Glo,* 309 Pa. 236, 163 A. 523 (Pa. 1932); *See also Garcia v. Savage,* 402 Pa. Super. 324, 586 A.2d 1375, 1377-78 (1991). The rationale behind *Nanty-Glo* is that "testimonial affidavits of the moving party or his witnesses,... will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury." *Scalice v. Pennsylvania Employees Benefit Trust Fund,* 883 A.2d 429, 432 & n.5 (Pa. 2005) (reversing summary judgment); *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989). An exception to *Nanty-Glo* is when the moving party relies upon uncontradicted testimony of another party, even a co-defendant, who is an adverse party and equally liable to plaintiff. *Rosenberry v. Evans,* 48 A.3d at 1259-60 (Pa. Super. 2012) (internal citations omitted). In *Rosenberry,* pursuant to *Nanty-Glo,* the court denied defendants' motion for summary judgment when co-defendants offered the same testimony about the dog's dangerous propensities, and all had the same interest in showing that the dog was not dangerous. *Rosenberry,* 48 A.3d at 1260.

*Nanty-Glo Applies, and the Court Must Allow a Jury*

*to Determine What Defendant Knew About the Dog. Defendant's Motion for Summary Judgment is Denied.*

Both Rizkalla and Mekhail's testimony strongly suggests that Rizkalla communicated her awareness of the dangerous dog to defendant in her capacity as agent to him. This testimony also suggests that defendant was aware of the dog's dangerous propensities since Rizkalla informed him on several occasions of the dog's viciousness in the scope of her agency with him. Rizkalla dep. at 8, 23; Mekhail dep. at 21-26, 29-30, 45. The only evidence supporting defendant's claim that he was not informed of the vicious propensities of the dog is from his deposition testimony. Mekhail dep. at 51-52. This oral testimony alone is insufficient to remove the issue of material fact from the jury's consideration. Therefore it provides an insufficient basis for the requested entry of summary judgment. This is so because credibility of the testimony remains a matter for the jury. *See, e.g. Scalice,* 883 A.2d at 432 & n.5; *See also Nanty-Glo,* 309 Pa. 236 at 523. The court must therefore defer to the jury as fact finder to determine and conclude whether or not defendant knew of the dangerous dog either directly or vicariously through his agent. Therefore we deny defendant's motion for summary judgment. An appropriate order follows.

## ORDER

And now, this 5th day of April, 2013, it is hereby ordered and decreed that defendant's motion for summary judgment is hereby denied and dismissed.