J-A06022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WILLIAM AARON BROSKY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MJC INDUSTRIES, INC., | |
| Appellant | No. 2138 EDA 2016 |

Appeal from the Order June 21, 2016
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2013-03355

BEFORE:  PANELLA, SHOGAN, and RANSOM, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 24, 2017**

Appellant, MJC Industries, Inc., appeals from the order entered June 21, 2016, in the Court of Common Pleas of Bucks County, granting the praecipe of Appellee, William Aaron Brosky ("Brosky") to withdraw Counts I, IV, and V of his complaint, following the trial court's previous order granting Brosky's motion for partial summary judgment as to counts II and III.  We affirm.

The trial court, partially quoting its prior opinion, summarized the factual and procedural history of this case as follows:

> In 2001, [Brosky] was approximately twelve (12) years old when he met Michael Mesko [an adult].   Sometime   thereafter,   Mesko   became sexually involved with [Brosky]. [Brosky] eventually reported these incidents leading to Mesko's arrest by the Allentown Police Department in February 2010. Mesko was charged with involuntary deviate sexual

intercourse pursuant to 18 Pa. C.S. § 3123. On October 13, 2010, Mesko pled guilty to this charge and was sentenced to 5-15 years of incarceration.

Prior to his incarceration, Mesko owned and operated a landscaping business, Mesko Landscaping, Inc., which used for its operations certain real estate owned by Mesko personally. On October 12, 2010, the day before Mesko's guilty plea, he signed a deed transferring his fee simple ownership of real property located at 3268 Route 212, Springtown, PA 18081 (hereinafter "the Route 212 property") to Appellant, MJC Industries, Inc., in exchange for $1.00. In addition, on the same date, Mesko signed a deed transferring his ownership of approximately 36 acres of real estate located at 1515 Woodcock Road, Kintnersville, PA 18930 (hereinafter "the Woodcock Road property") to Appellant in exchange for $1.00. Mesko also transferred stock in Mesko Landscaping, Inc. to Glenn Jackson, CEO of Appellant, MJC Industries, Inc. Other than the assets transferred, Mesko only retained a cabin in the Poconos, which he valued between $25,000 and $40,000. This cabin was subsequently sold at sheriff's sale because Mesko was unable to pay the real estate taxes thereon. Mesko admitted that he did not retain any other valuable assets. The 1515 Woodcock Road property was unencumbered by any mortgage, tax lien or other liability at the time of transfer. Both Mesko and Jackson admitted that they believed the value of this property was approximately $200,000. [Brosky's] appraiser valued the property to be $250,000 in October 2010. The 3268 Route 212 property was encumbered by a $200,000 line of credit. [Brosky's] appraiser valued this property to be $265,000 in October 2010.

On April 1, 2011, [Brosky] filed a civil suit against Mesko in the Lehigh County Court of Common Pleas, Docket No. 2011-C-1300, which resulted in a stipulated judgment against Mesko in the principal amount of $500,000.00. The judgment

was indexed in the Lehigh County Court of Common Pleas on December 14, 2012.

On May 13, 2013, [Brosky] filed the instant action in order to collect upon said judgment. At the time this suit was brought, [Brosky] had not collected any sum towards the $500,000 judgment. On June 26, 2013, Appellant filed an Answer to [Brosky's] Complaint. Thereafter, the parties engaged in discovery, and various motions and responses were filed by the parties. On December 26, 2013, [Brosky] filed a Motion for Summary Judgment claiming that the allegations of the Complaint were uncontroverted and therefore, no genuine issue of material fact existed. On January 28, 2013, Appellant filed his Response to [Brosky's] Motion for Summary Judgment as well as a "Motion to Dismiss Complaint with Prejudice for Failure to Join Indispensable Party and Lack of Jurisdiction." The parties filed additional supporting memoranda thereafter.

Trial Court Opinion, 06/30/14, pp. 1-3.

[The trial court] granted [Brosky's] Motion for Summary Judgment on February 20, 2014. Appellant filed an initial Notice of Appeal to Superior Court in response to [the] Order, and this Court's Opinion in support of our Order was docketed on July 2, 2014. On May 18, 2015, [the] Superior Court filed a Memorandum Opinion quashing Appellant's Appeal due to lack of jurisdiction, remanding the case for [the trial court] to make an express determination as to whether an indispensable party was absent from the litigation, as well as to resolve [Brosky's] remaining claims that [the] partial summary judgment Order did not specifically address.

On June 30, 2015, Appellant filed a "Motion to Vacate Order Granting Summary Judgment and Rule on Superior Court's Order of Remand and Instruction to Rule on Defendant MJC's Motion to Dismiss for Failure to Name Indispensable Parties." [The trial court] heard oral argument on said Motion on July 22, 2015, whereupon [it] ordered both parties to brief their arguments. Upon the arguments presented at oral argument and a review of the filings of record and the allegations therein,

- 3 -

[the trial court] determined that Appellant's Motion was without merit and issued an Order denying the Motion on September 14, 2015.

Appellant filed a Notice of Appeal of this Court's Order on October 8, 2015, however, [the] Superior Court Quashed the Appeal *sua sponte* as it was interlocutory in light of the fact that Counts I, IV, and V of [Brosky's] Complaint were still undecided. [Brosky] filed a Praecipe to Withdraw said Counts on June 9, 2016, which [the trial court] granted in a June 21, 2016 Order. Appellant filed a timely Notice of Appeal from that Order to the Superior Court on July 5, 2016.

Trial Court Opinion, 8/4/16, at 1-3 (internal citations omitted). The trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the trial court err as a matter of law in failing to Vacate its Order granting Summary Judgment after remand by the Superior Court when it:

a) failed to recognize the material issues of fact in dispute that should be presented to a jury concerning consideration for the transfer of real property as pointed out by the Superior Court;

b) violated the fundamental rule that "the Court is not to decide issues of fact when resolving a motion for summary judgment, but merely to determine whether any such issues exist";

c) failed to recognize that genuine issues of material facts in dispute can be and are established by depositions of the parties; the trial court, despite being presented with the actors testimony by deposition in which they clearly indicate their belief that the transaction was a legitimate and necessary complex transaction between them which included critical non-monetary consideration, the court ignored these factors when granting summary judgment[;]

- 4 -

d) In granting summary judgment based on the trial court's own determination of facts and law the trial court erred as a matter of law and fact by not allowing a jury to ascertain the credibility, demeanor and veracity of the witnesses and draw their own conclusions from testimony given and further the trial court violated the "Nanty-Glo Rule[.]"

2. Did the trial court err as a matter of law in failing to grant [Appellant's] Motion to Dismiss for failure to Name Indispensable Parties and then in proceeding with this case despite having no subject matter jurisdiction in this matter:

a) [A]ppellee failed to name as a party the debtor who sold the property in question and who would have to be proven to be in violation of the Uniform Fraudulent Transfer Act;

b) [A]ppellee failed to name as a party the individual who as sole shareholder, sole director, sole officer and sole negotiator for the shell corporation in whose name the real property was placed and who has right and interest related to the claim in the cause of action[;]

c) [A]ppellee failed to name as a party Mesko Landscaping, Inc., [a] jointly owned company of Jackson and Mesko that has over $400,000.00 worth of trees growing on the real property and [whose] assets were not allowed to be considered due to the trial judge granting summary judgment, is also an essential unnamed party as defined by Mechanicsburg Area School District.

3. The trial court failed as a matter of law and fact in ignoring the clear defense of Latches [sic]. The issue of Latches [sic] constitutes a separate defense from the alleged failure of consideration and it constitutes a separate and viable genuine issue of material fact in dispute tha[t] would defeat the motion for summary judgment. Further, had the proper parties been named as defendants they would have joined said issue[.]

Appellant's Brief at 3-4.

We must first address Appellant's second issue in which it asserts that the trial court erred in failing to grant the motion to dismiss the complaint due to Brosky's failure to join indispensable parties because such claim implicates our jurisdiction. "Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction." *Orman v. Mortgage I.T.*, 118 A.3d 403, 406 (Pa. Super. 2015) (citation omitted). This issue may be raised *sua sponte*. *Id.*

Appellant argues that three indispensable parties were not named in the Complaint. Appellant's Brief at 21. First, Appellant posits that Michael Mesko, as the debtor who sold the property in question and "who would have to be proven to be in violation of the Uniform Fraudulent Transfer Act," was an indispensable party. *Id.* at 21. Second, Appellant identifies Glenn Jackson as an indispensable party and explains that Jackson is "the individual who as sole shareholder, sole director, sole officer and sole negotiator for the shell corporation in who's [sic] name the real property was placed and who has right and interest related to the claim in the cause of action." *Id.* at 21, 27-28. Third, Appellant asserts that Mesko Landscaping is an indispensable party, and in support of such claim maintains that "Mesko Landscaping, as a property of Mr. Mesko and Mr. Jackson and a[n] occupier of the real property in question also has a stake in this matter. It has a crop of trees growing on the property and meets the criteria [for an indispensable party]." *Id.* at 29.

Pennsylvania Rule of Civil Procedure 1032 provides as follows:

**Rule 1032. Waiver of Defenses. Exceptions. Suggestion of Lack of Subject Matter Jurisdiction or Failure to Join Indispensable Party**

(a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

(b) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action.

Pa.R.C.P. 1032.

An indispensable party is one whose "rights are so connected with the claims of the litigants that no decree can be made without impairing or infringing upon those rights." *Sprague v. Casey*, 550 A.2d 184, 189 (Pa. 1988) (citations omitted). *See also Commercial Banking Corp. v. Culp*, 443 A.2d 1154 (Pa. Super. 1982) ("A person is a necessary and indispensable party only when his rights are so connected with the claims of the litigants that no decree can be made without impairing his rights."). As this Court has explained: "[i]f no redress is sought against a party, and its

rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." ***Orman***, 118 A.3d at 406.

In evaluating this issue, the following factors must be considered:

1. Do absent parties have a right or an interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

***Martin v. Rite Aid of Pennsylvania, Inc.***, 80 A.3d 813, 814 (Pa. Super. 2013) (citation omitted) (quoting ***Mechanicsburg Area Sch. Dist. v. Kline***, 431 A.2d 953 (Pa. 1981)).

A previous panel of this Court remanded this matter and in so doing specifically directed the trial court to address the issue of whether Mesko, Jackson, and Mesko Landscaping were indispensable parties to this action. ***Brodsky v. MJC Industries, Inc.***, 760 EDA 2014, 122 A.3d 451 (Pa. Super. filed May 18, 2015).[1]  Per this Court's directive, the trial court conducted a thorough analysis regarding each party.  Following its cogent and detailed analysis, which spans seven pages, the trial court concluded that none of the three named parties constituted indispensable parties.  Trial Court Opinion, 8/4/16, at 16-22.  The trial court's determinations are

---

[1] We note that in the appeal previously before this Court, Appellee's name was spelled "Brodsky".

supported by the evidence of record. We agree with the trial court's well-reasoned analysis and conclusions and adopt them as our own. *Id.* Thus, having determined that there were no indispensable parties not named, we conclude that we have jurisdiction over this matter and consider Appellant's remaining issues.

Appellant next argues that the trial court erred as a matter of law in failing to vacate its order granting summary judgment after remand by a previous panel of this Court. Appellant's Brief at 12. As outlined previously in presenting Appellant's issues on appeal, Appellant presents four sub-issues in support of this claim. *Id.* at 3, 12. We repeat them here:

> [The trial court:]
>
> a) failed to recognize the material issues of fact in dispute that should be presented to a jury concerning consideration for the transfer of real property as pointed out by the Superior Court;
>
> b) violated the fundamental rule that "the Court is not to decide issues of fact when resolving a motion for summary judgment, but merely to determine whether any such issues exist";
>
> c) failed to recognize that genuine issues of material facts in dispute can be and are established by depositions of the parties; the trial court, despite being presented with the actors testimony by deposition in which they clearly indicate their belief that the transaction was a legitimate and necessary complex transaction between them which included critical non-monetary consideration, the court ignored these factors when granting summary judgment;

d) In granting summary judgment based on the trial court's own determination of facts and law the trial court erred as a matter of law and fact by not allowing a jury to ascertain the credibility, demeanor and veracity of the witnesses and draw their own conclusions from testimony given and further the trial court violated the "Nanty-Glo Rule."

Appellant's Brief at 3, 12.

An order granting summary judgment is subject to the following scope and standard of appellate review:

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Shepard v. Temple University*, 948 A.2d 852, 856 (Pa. Super. 2008) (quoting *Murphy v. Duquesne University*, 777 A.2d 418, 429 (Pa. 2001)).

As explained previously, on February 20, 2014, the trial court granted Brosky's motion for summary judgment as to counts II and III of his complaint. Count II of the complaint alleged that the transfers of the Route

212 property and the Woodcock Road property to Appellant were fraudulent transfers pursuant to Pennsylvania's Uniform Fraudulent Transfer Act ("UFTA"), 12 Pa.C.S. § 5104. Specifically, Brosky raised his claim under 12 Pa.C.S. § 5104(a)(2)(ii) which states:

> **(a) General rule.--**A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> * * *
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> * * *
>
> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S. § 5104(a)(2)(ii).

Count III of the complaint alleged that the transfers were fraudulent pursuant to UFTA, 12 Pa.C.S. § 5105. Section 5105 provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

12 Pa.C.S. § 5105.

- 11 -

After conducting a thorough analysis based on the evidence presented as to the required elements of these two claims, the trial court concluded that there were no genuine issues of material fact as to any of the elements. Trial Court Opinion, 8/4/16, at 7-14. The trial court opined that: Brosky's claim arose before the transfers; Mesko did not receive reasonably equivalent value in exchange for the properties; Mesko reasonably should have believed he would incur debts beyond his ability to pay; and, Mesko became insolvent as a result of the transfers. *Id.* The certified record supports the determinations of the trial court. Accordingly, we adopt its well-reasoned analysis as our own. *Id.* Thus, we conclude that the trial court did not abuse its discretion in granting Brosky's motion for summary judgment as to Counts II and III of his complaint.

Furthermore, we conclude that Appellant's fourth sub-issue, wherein it asserts that the trial court violated the *Nanty-Glo*[2] rule, lacks merit. Appellant's Brief at 13. Appellant contends that "[u]nder *Nanty-Glo*, the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish

---

[2] *Borough of Nanty–Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932). The *Nanty–Glo* rule prohibits summary judgment "where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact except where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witness." *Lineberger v. Wyeth*, 894 A.2d 141, 149 (Pa. Super. 2006).

the non-existence of genuine issues of material fact." Appellant's Brief at 13. Appellant avers that the trial court violated this rule by relying on the testimony provided by Mesko and Jackson. *Id.* Appellant maintains that because Brosky called Mesko and Jackson as witnesses and failed to identify them as defendants in this matter, they were his witnesses, and under *Nanty-Glo*, Brosky could not succeed on his motion for summary judgment based upon their testimony. *Id.*

Our review of Appellant's answer to [Brosky's] motion for summary judgment reveals that Appellant failed to timely raise this issue. While Appellant argued that the trial court should not grant Brosky's motion for partial summary judgment, it failed to mention the *Nanty-Glo* rule in its response. [Appellant's] Answer to [Brosky's] Motion for Summary Judgment as to Counts II and III of [Brosky's] Complaint, 1/28/14. It appears that Appellant raised this issue for the first time in its February 24, 2014 motion for reconsideration. Motion for Reconsideration of Order Granting [Brosky's] Motion for Summary Judgment as to Counts II and III of [Brosky's] Complaint, 2/24/14, at ¶ 5. This Court has held that "a non-moving party's failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal." *Devine v. Hutt*, 863 A.2d 1160, 1169 (Pa. Super. 2004); *see also Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391 (Pa. Super. 2011) (holding issues raised in a motion for reconsideration filed after entry of summary judgment are

"beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal"). This includes the failure to raise a **Nanty-Glo** issue. **Lineberger**, 894 A.2d at 149. Additionally, Appellant failed to raise this issue in its Pa.R.A.P. 1925(b) statement. "An appellant's failure to include an issue in his Rule 1925(b) statement waives that issue for purposes of appellate review." **Id.** Accordingly, Appellant is not entitled to relief on this claim.

Even if Appellant had not waived its **Nanty–Glo** argument, the claim still fails on the merits. The trial court did not rely solely on the testimony of Mesko and Jackson in granting partial summary judgment.[3] Appellant's Motion for Summary Judgment, 12/26/13; Complaint, 5/13/13; Trial Court Opinion, 8/4/16, at 6-14; **see also Rosenberry v. Evans**, 48 A.3d 1255, 1262 (Pa. Super. 2012) (where the trial court did not rely solely upon oral testimony in support of summary judgment, **Nanty–Glo** was not triggered.). Additionally, as is clear from the facts in this case and the argument presented by Appellant, Mesko and Jackson were adverse parties to Brosky. **See id.** at 1261-1262 (where an individual's legal interests in a given context are adverse to a moving party, that individual is deemed an adverse

---

[3] Evidence relied upon in addition to testimony included, *inter alia*, the deeds transferring the properties, Complaint, 5/13/13, at Exhibits A and B; stock transfer of Mesko Landscaping to Jackson, Motion for Summary Judgment, 12/26/13, at Exhibit 3; and appraisal reports of the properties, *id.* at Exhibits 6 and 7.

party for purposes of the ***Nanty-Glo*** rule.).   Thus, the trial court did not violate the ***Nanty-Glo*** rule in granting Brosky's partial motion for summary judgment.

Finally, Appellant argues that the trial court failed as a matter of law and fact in ignoring the defense of laches.[4]   Appellant's Brief at 29. Appellant argues that the "issue of latches [sic] constitutes a separate defense from the alleged failure of consideration and it constitutes a separate and viable genuine issue of material fact in dispute tha[t] would . . . defeat the motion for summary judgment." ***Id.***  Appellant also asserts that "had the proper parties been named as defendants they would have joined said issue." ***Id.***  Apart from setting forth legal tenets regarding the doctrine of laches, Appellant includes the following single statement in support of this argument:  "Mr. Brosky in allowing the claim he had to lay fallow for such an extended period played a role in belief that they could safely go forward with this transaction." ***Id.*** at 30.

This Court has explained:  "[t]he doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence

_____

[4] Although Appellant refers to this defense in its brief as "Latches," we presume from the context of the brief that it is referring to the defense of laches.

- 15 -

that they have disappeared." ***Fulton v. Fulton***, 106 A.3d 127, 131 (Pa. Super. 2014) (quoting ***Jackson v. Thomson***, 53 A. 506, 506 (Pa. 1902)).

> The doctrine of laches bears these requirements:
>
> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case.

***Fulton***, 106 A.3d at 132 (quoting ***Estate of Scharlach***, 809 A.2d 382, 383 (Pa. Super. 2002)). The doctrine of laches is not subject to a statute of limitations; indeed, laches may bar a suit in equity when a legal claim involving the same matter is still within a statute of limitations. ***Id.***

Here, Appellant has failed to allege the requirements for application of the doctrine of laches. Moreover, Appellant has failed to establish a delay arising from Brosky's failure to exercise due diligence or prejudice resulting to Appellant from the delay. ***Fulton***, 106 A.3d at 132. Thus, Appellant has failed to establish that the doctrine of laches is applicable in this case.

Additionally, we note that the $500,000 stipulated judgment obtained by Brosky in the underlying civil action was not indexed in the Lehigh County Court of Common Pleas until December 14, 2012. Trial Court Opinion, 8/4/16, at 14. Approximately five months later, Brosky initiated the instant action in order to collect upon said judgment. Thus, without further evidence to the contrary, it does not appear that a delay resulted from

Brosky's failure to exercise due diligence. Accordingly, we cannot conclude that the trial court erred in failing to apply the doctrine of laches. Thus, Appellant is not entitled to relief on this claim.

Order affirmed.[5]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2017

---

[5] The parties are directed to attach a copy of the August 4, 2016 trial court opinion in the event of further proceedings in this matter.

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
### CIVIL ACTION – LAW

WILLIAM AARON BROSKY        :          No. 2013-03355

       :

     v.               :

       :

MJC INDUSTRIES, INC. .        :

Case #: 2013-03355  B09  11285896

Code: 5214      Judge:34
Patricia L. Bachtle, Bucks County Prothonotary
Rcpt: Z1581724  8/4/2016 3:16:32 PM

## OPINION

MJC Industries, Inc. (hereinafter "Appellant") has appealed this Court's June 21, 2016

Order Withdrawing Counts I, IV, and V of William Aaron Brosky's (hereinafter "Appellee")

Complaint[1]. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), we file this Opinion

in support of this Court's ruling.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this case were detailed in this Court's prior Opinion, dated June 30, 2014,

and are set forth herein:

> In 2001, Appellee was approximately twelve (12) years old when he met
> Michael Mesko. Sometime thereafter, Mesko became sexually involved with
> Appellee. Appellee eventually reported these incidents leading to Mesko's arrest
> by the Allentown Police Department in February 2010. Mesko was charged with
> involuntary deviate sexual intercourse pursuant to 18 Pa. C.S. § 3123. On October
> 13, 2010, Mesko pled guilty to this charge and was sentenced to 5-15 years of
> incarceration. *Appellee's Complaint*, ¶¶ 3-7; *Appellant's Answer*, ¶¶ 3-7.
> Prior to his incarceration, Mesko owned and operated a landscaping
> business, Mesko Landscaping, Inc., which used for its operations certain real estate
> owned by Mesko personally. On October 12, 2010, the day before Mesko's guilty
> plea, he signed a deed transferring his fee simple ownership of real property located
> at 3268 Route 212, Springtown, PA 18081 (hereinafter "the Route 212 property")
> to Appellant, MJC Industries, Inc., in exchange for $1.00. *Appellee's Complaint*,
> Ex. A. In addition, on the same date, Mesko signed a deed transferring his
> ownership of approximately 36 acres of real estate located at 1515 Woodcock Road,
> Kintnersville, PA 18930 (hereinafter "the Woodcock Road property") to Appellant
> in exchange for $1.00. *Appellee's Complaint*, Ex. B. Mesko also transferred stock

---

[1] Previously, this Court issued an Order on February 7, 2014 granting Summary Judgment on Counts II and III of Appellee's Complaint. Considering that our June 21, 2016 Order granted the withdrawal of each of the remaining Counts of Appellee's Complaint, it was a final, appealable Order.

in Mesko Landscaping, Inc. to Glenn Jackson, CEO of Appellant, MJC Industries, Inc. *Mesko Deposition Transcript* (unlabeled exhibit to Appellee's Motion for Summary Judgment), pp. 54-57. Other than the assets transferred, Mesko only retained a cabin in the Poconos, which he valued between $25,000 and $40,000. This cabin was subsequently sold at sheriff's sale because Mesko was unable to pay the real estate taxes thereon. Mesko admitted that he did not retain any other valuable assets. *Mesko Deposition Transcript*, pp. 64-65. The 1515 Woodcock Road property was unencumbered by any mortgage, tax lien or other liability at the time of transfer. Both Mesko and Jackson admitted that they believed the value of this property was approximately $200,000. Appellee's appraiser valued the property to be $250,000 in October 2010. The 3268 Route 212 property was encumbered by a $200,000 line of credit. Appellee's appraiser valued this property to be $265,000 in October 2010. *Appellee's Motion for Summary Judgment*, ¶¶ 34-35.

On April 1, 2011, Appellee filed a civil suit against Mesko in the Lehigh County Court of Common Pleas, Docket No. 2011-C-1300, which resulted in a stipulated judgment against Mesko in the principal amount of $500,000.00. The judgment was indexed in the Lehigh County Court of Common Pleas on December 14, 2012. *Appellee's Complaint* ¶¶ 11-12; *Appellant's Answer*, ¶¶ 11-12.

On May 13, 2013, Appellee filed the instant action in order to collect upon said judgment. At the time this suit was brought, Appellee had not collected any sum towards the $500,000 judgment. On June 26, 2013, Appellant filed an Answer to Appellee's Complaint. Thereafter, the parties engaged in discovery, and various motions and responses were filed by the parties. On December 26, 2013, Appellee filed a Motion for Summary Judgment claiming that the allegations of the Complaint were uncontroverted and therefore, no genuine issue of material fact existed. On January 28, 2013, Appellant filed his Response to Appellee's Motion for Summary Judgment as well as a "Motion to Dismiss Complaint with Prejudice for Failure to Join Indispensable Party and Lack of Jurisdiction." The parties filed additional supporting memoranda thereafter.

Trial Court Opinion, 06/30/14, pp. 1-3.

This Court granted Appellee's Motion for Summary Judgment on February 20, 2014. Appellant filed an initial Notice of Appeal to Superior Court in response to our Order, and this Court's Opinion in support of our Order was docketed on July 2, 2014. On May 18, 2015, Superior Court filed a Memorandum Opinion quashing Appellant's Appeal due to lack of jurisdiction, remanding the case for this Court to make an express determination as to whether an indispensable party was absent from the litigation, as well as to resolve Plaintiff's remaining claims that our partial summary judgment Order did not specifically address.

2

On June 30, 2015, Appellant filed a "Motion to Vacate Order Granting Summary Judgment and Rule on Superior Court's Order of Remand and Instruction to Rule on Defendant MJC's Motion to Dismiss for Failure to Name Indispensable Parties." This Court heard oral argument on said Motion on July 22, 2015, whereupon we ordered both parties to brief their arguments. Upon the arguments presented at oral argument and a review of the filings of record and the allegations therein, we determined that Appellant's Motion was without merit and issued an Order denying the Motion on September 14, 2015.

Appellant filed a Notice of Appeal of this Court's Order on October 8, 2015, however, Superior Court Quashed the Appeal *sua sponte* as it was interlocutory in light of the fact that Counts I, IV, and V of Appellee's Complaint were still undecided. Appellee filed a Praecipe to Withdraw said Counts on June 9, 2016, which this Court granted in a June 21, 2016 Order. Appellant filed a timely Notice of Appeal from that Order to the Superior Court on July 5, 2016.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On July 7, 2016, this Court issued an Order pursuant to Pa.R.A.P. §1925(b) requiring Appellant to file a Concise Statement of Errors Complained of on Appeal no later than twenty-one (21) days after entry of the Order. Appellant filed such a Statement on July 26, 2016, which raised the following issues, *verbatim*:

1. The court erred as a matter of law in failing to Vacate its' [sic] Order Granting Summary Judgment, after remand by the Superior Court, by failing to recognize or appreciate the fact that material issues of fact are disputed and that there are issues to present to the jury regarding the consideration for the transfer of the real property in question as pointed out by the Superior Court in its' [sic] Opinion.

2. The court erred as a matter of law in violating the rule that the "Court is not to decide issues of fact when resolving a motion for summary judgment, but merely to determine whether any such issues exist". [sic]

3. The court erred as a matter of law when it failed to recognize that genuine issues of material facts in dispute are established by the depositions of the parties to the

3

transaction that is the core issue that, as plaintiff avers, is subject to the Fraudulent Transfer Act. Thus [sic] despite being presented with the actors [sic] testimony from depositions [sic] which clearly indicate a legitimate and necessary complex transaction between the parties that included critical non-monetary consideration to support said transaction [sic] the court ignored these factors in determining that there are no issues of material fact thus [sic] granting the Motion for Summary Judgment.

4. The court erred as a matter of law in granting summary judgment in that it failed to consider the defense that there is a genuine issue of material fact because the cause of action is dependent upon the credibility and demeanor of the witnesses who will testify at trial. By granting Summary Judgment [sic] the trial court ailed to allow a jury to draw their conclusions from testimony as given.

5. The court erred as a matter of law and fact in ignoring and failing to address or consider the clear defense of Latches [sic] presented by the defendant. Latches constituted a separate defense from the alleged failure of consideration by the court. The question of latches [sic] presents a separate avenue of a genuine issue of material fact that is sufficient to defeat a motion for summary judgment independent of the other issues presented.

6. The trial court erred as a matter of law in that it ruled on the Motion for Summary Judgment despite having no jurisdiction over the matter. The plaintiff failed to name as a party the individual who owned the properties that are alleged to have been fraudulently transferred. Thus, an essential absent party who has a right or interest related to the claim of the cause of action remains an unnamed party and therefore [sic] the court was deprived of jurisdiction.

7. The court erred as a matter of law in that it ruled on a Motion for Summary Judgment despite having no jurisdiction over the matter, due to the fact that The [sic] plaintiff failed to name as a party the individual who was the sole shareholder of the defendant company, Glenn Jackson, to whom the properties were transferred and, who had invested in the properties that are alleged to have been fraudulently transferred, prior to the transfer.

8. The court erred as a matter of law in that it ruled on a Motion for Summary Judgment despite having no jurisdiction over the matter, due to the fact that The [sic] plaintiff failed to name as a party the Company, Mesko Landscaping, Inc., which was an essential party to the litigation in that the company stores over $400,000 in inventory, ie. [sic] Trees [sic] needed for its' [sic] business, on the property. Thus, another essential absent party who has a tight or interest related to the claim of the cause of action remains an unnamed party and therefore [sic] the court was deprived on jurisdiction.

9. The trial court erred as a matter of law in its failure to name essential parties to the action, to wit: the transferor, Michael Mesko; the individual stockholder of the transferee, Glenn Jackson; and the corporation, Michael Mesko, Inc., which uses the

4

property transferred and acquired by the Plaintiff for storage of its' [sic] inventory, to wit: trees planted for landscaping purposes. As a result of failing to name indispensable parties, the court lacked jurisdiction over the matter and the Motion to Dismiss should have been granted.

## ANALYSIS

I.  **This Court appropriately granted partial summary judgment given that there existed no genuine issue of material fact.[2]**

### A. Summary Judgment Standard

The scope of review of an order granting or denying summary judgment is plenary. Universal Teleservices, Arizona, LLC v. Zurich American Ins. Co., 879 A.2d 230, 232 (Pa. Super. 2005). The well-established standard of review demonstrates that "the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." Universal Health Services, Inc. v. PIGA, 884 A.2d 889, 892 (Pa. Super. 2005). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." Chaney v. Meadville Medical Center, 912 A.2d 300, 306 (Pa. Super. 2006) (citing Harman v. Borah, 756 A.2d 1116, 1123 (Pa. 2000)).

Under Pennsylvania Rule of Civil Procedure 1035.2, summary judgment may be rendered as a matter of law:

> (1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report; or
>
> (2) if after the completion of discovery relevant to the motion ... an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts

---

[2] The below section of analysis (I.) has been duplicated in its entirety from this Court's June 30, 2014 Opinion in this Matter. Appellant's first five (5) Matters Complained of on Appeal are identical in nature to those raised in his previous Appeal, and our analysis of these claims remains the same. The Superior Court correctly observed that Appellant's prior Appeal was interlocutory in nature and, therefore, did not render a decision upon the claims of Appellant or this Court's reasoning as expressed in our Opinion. See Trial Court Opinion, 06/30/14, pp. 4-15.

essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Summary judgment is appropriate when the moving party establishes that the case is free and clear of doubt, that there are no genuine issues of material fact, and the moving party is entitled to relief as a matter of law. Summers v. Certainteed Corp., 997 A.2d 1152 (Pa. 2010). The function of the Court is to examine the record in the light most favorable to the non-moving party and accept as true all well-pleaded facts in the pleadings together with all reasonable inferences there from favoring the non-moving party. Ryan v. Asbestos Corp. Ltd., 829 A.2d 686 (Pa. Super. 2003). The burden is on the moving party, but it has long been recognized that summary judgment should be granted to the movant unless the opposing party offers competent evidence, which would be admissible at trial, showing that there is a genuine issue as to a material fact that would warrant submitting the case to the trier of fact. Community Medical Services of Clearfield, Inc. v. Local 2665, 437 A.2d 23, 27 (Pa. Super. 1981).

### B. Summary Judgment was Appropriately Granted

Appellant's Statement of Matters Complained of numbers 1 through 5 all pertain to this Court's grant of summary judgment to Appellee on Counts II and III of Appellee's Complaint. Therefore, we discuss these matters jointly herein. This Court neither erred as a matter of law nor abused its discretion in granting summary judgment in favor of Appellee because no material facts are at issue.

Count II of the Complaint alleges that the transfers of 3268 Route 212 and 1515 Woodcock Road (hereinafter "the properties") to Appellant were fraudulent transfers pursuant to Pennsylvania's Uniform Fraudulent Transfer Act ("UFTA"), 12 Pa.C.S. §5104. Section 5104 provides several alternatives for finding a transfer fraudulent. Appellee raised his claim under 12 Pa.C.S. §5104(a)(2)(ii) which states:

6

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[3]

Count III of the Complaint alleges that the transfers were fraudulent pursuant to UFTA, 12 Pa.C.S. §5105. Similarly, Section 5105 provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

No genuine issue of material fact was present as to any of the elements required by 12 Pa.C.S. §5104(a)(2)(ii) or 12 Pa.C.S. §5105.

### 1.) Appellee's Claim Arose Before the Transfers

Although Section 5104(a) allows for claims that arose before or after an allegedly fraudulent transfer, Section 5105 requires that the claim have arisen before the transfer. In this case, Appellee's claim arose at the time of the conduct which led to the liability, Mesko's sexual acts with Appellee. These acts occurred well before the transfer of the properties.

A "creditor" is a "person who has a claim" and a "debtor" is a "person who is liable on a claim." 12 Pa.C.S. §5101. A "claim" is generally defined as a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 12 Pa.C.S. §5101(b). Legal liability "when read together with the word Claim, . . . cannot mean only liability which exists

---

[3] 12 Pa. C.S. § 5104(a)(1) requires that the debtor have acted "with actual intent to hinder, delay or defraud any creditor of the debtor." Since Appellee has raised the second option pursuant to 12 Pa. C.S. § 5104(a)(2), actual intent to defraud was not required on the part of Mesko.

7

after a verdict following a trial." Baker v. Geist, 321 A.2d 634, 636-37 (Pa. 1974). In Baker, liability was based on the debtor's conduct, her negligence in a motor vehicle collision, which occurred before the alleged fraudulent transfers. Although a jury verdict was obtained against debtor subsequent to the alleged fraudulent transfers, the Court found that a claim arose before the transfers. See id.; see also Melat v. Melat, 602 A.2d 380, 386 (Pa. Super. 1992).

The creditor in this case was Appellee Brosky, who had obtained a $500,000.00 judgment by stipulation in the Lehigh County Court of Common Pleas. The judgment was obtained against the debtor, Michael Mesko, and was indexed on the docket on December 14, 2012. The transfer of the properties occurred more than two (2) years prior, on October 12, 2010. Similar to the Baker case, although Appellee did not obtain the stipulated judgment until December 2012, Mesko's conduct from approximately 2001 until sometime before February 2010, when he was arrested, established Appellee as a creditor with a claim against Mesko well before the October 2010 transfers. Thus, this element is satisfied under both Sections 5104(a)(2) and 5105.

### 2.) Mesko did not Receive Reasonably Equivalent Value

Sections 5104(a) and 5105 require that the allegedly fraudulent transfers be made by a debtor that does not receive reasonably equivalent value. There is no genuine issue of fact that Appellant failed to provide reasonably equivalent value to Mesko in exchange for the properties.

First, we look to the instruments transferring ownership of the properties from Mesko to Appellant, MJC Industries, Inc. The second paragraph of the instrument transferring ownership of the Route 212 property states that "the said Grantor(s) for and in consideration of the sum of One Dollar ($1.00) lawful money of the United States of America . . . has granted . . . unto the said Grantee(s), its'/his/her/their heirs and Assigns." Appellee's Complaint, Ex. A. On the first page of the instrument which purports to convey the Woodcock Road property, it states "[t]hat in

8

consideration of the sum of One ($1.00) Dollar, in hand paid, . . . the said Grantor does hereby grant and convey to the said Grantee . . . ." Appellee's Complaint, Ex. B. Mesko admits that he was paid $1.00 by Appellant. Mesko Deposition Transcript, pp. 30-31.

Appellant argued that additional consideration, not named in the deeds, was provided to Mesko in exchange for the properties. We shall address each claim of additional consideration individually. Moreover, we note that the Woodcock Road property was appraised by Appellee to have equity in the amount $250,000 at the time of transfer. Further, the 3268 Route 212 property was appraised to have equity in the amount of $265,000 and was subject to a $200,000 line of credit, leaving equity of approximately $65,000.

In First Nat. Bank of Marietta v. Hoffines, the Pennsylvania Supreme Court rejected the contention that past services rendered by a wife to her husband over several years constituted "fair consideration." See First Nat. Bank of Marietta v. Hoffines, 239 A.2d 458, 463 (1968); see also Coscia v. Hendrie, 629 A.2d 1024, 1027 (Pa. Super. 1993). The case at hand presents very similar circumstances. Appellant argues that Glenn Jackson, Appellant's CEO, had invested several years of time, money and effort into the operation of Mesko Landscaping, Inc., the landscaping company Mesko and Jackson, neighbors and family friends, were jointly involved in. The company was later transferred to Jackson in addition to the properties. Appellant claims the parties deemed these past services rendered as part of the purchase price instead of repayment and salary for the years of work Jackson provided. First, we note that the conveyance documents never mentioned Jackson's past services. Appellee's Complaint, Ex. A and B. Further, Jackson stated that he did not keep track of the hours he worked for the landscaping company, and could not provide an hourly rate for his services. Jackson Deposition Transcript (unlabeled exhibit to Appellee's Motion for Summary Judgment), p. 38. Appellant failed to

9

provide sufficient evidence to support that reasonably equivalent value was provided in the form of services for these properties, estimated to be worth $250,000 and $265,000.

Appellant next claimed that Jackson guaranteed Mesko employment and a place to live upon his release from prison, and that Mesko received an option to buy back all or part of the business at the time he was released. Jackson Deposition Transcript, p. 39, lines 13-23. Appellant claims this as additional consideration to support the property transfers. However, consideration in the form of a promise to support a grantor in the future is invalid "if by the conveyance the grantor renders himself unable to pay his debts, the theory being that a conveyance whereby a debtor puts his property beyond the reach of his creditors under an agreement that it shall be devoted in any way to his own use is constructively fraudulent." Commonwealth. v. Smith, 25 A.2d 694, 696 (Pa. 1942); see also Com. Trust Co. of Pittsburgh v. Cirigliano, 41 A.2d 863, 864-65 (Pa. 1945) (Pennsylvania Supreme Court held that a son promising to support his mother for the rest of her life was invalid consideration). Assuming Appellant's statements are true, Mesko, the grantor, rendered himself unable to pay his debts by making the transfers, and the transfers were devoted to his own future use and benefit. This would be constructively fraudulent.

Appellant further argues consideration in the form of a conservation easement on the Route 212 property assumed by Appellant as part of the transfer. The Conservation Easement is noted on the deed, which states that the easement "runs with the land and . . . was granted to Heritage Conservancy." Appellee's Complaint, Ex. B. This easement was given in exchange for $204,000, which was deposited into the business checking account of Mesko Landscaping, Inc., a company whose assets were also acquired by Glenn Jackson, CEO of Appellant, MJC Industries, Inc. Mesko Deposition Transcript, pp. 22-25. Appellant fails to state how an easement that runs with the land and is assumed by a grantee would constitute reasonably equivalent value.

10

Appellant merely states that the easement prevented any development on the land. In addition, Appellant's CEO possessed the business account in which the proceeds from the grant of the easement were deposited. Appellant failed to present any evidence to suggest the easement on the land constituted valuable consideration.

Finally, Appellant argues that its assumption of a $200,000 line of credit on the Route 212 property constituted reasonably equivalent value. We first note that Appellee's estimate, the only estimate submitted to this Court for this property, was $265,000. Further, the Woodcock Road property, estimated to be worth $250,000, was unencumbered. Assumption of a mortgage or other encumbrance on a property by a grantee could be regarded as "fair consideration" as it gives a benefit to the grantor. See Cont'l Bank v. Marcus, 363 A.2d 1318, 1320-21 (Pa. Super. 1976). However, the Court must consider the entire fabric of the dealings between the parties. Id. First, the line of credit and the encumbrance on the property was in the amount of $200,000, whereas the property was estimated to be worth $265,000, rendering a significant $65,000 of equity obtained by Appellant for essentially no additional consideration as discussed above. Further, Mesko stated that some of the proceeds from the grant of the conservation easement were used to pay down the line of credit. He estimated approximately $50,000 was used for this purpose. Mesko Deposition Transcript, pp. 22-24. Thus, the equity in the property acquired by Appellant is likely higher than $65,000. Moreover, both properties were transferred from Mesko to Appellant on exactly the same day, October 12, 2010, the day before he pled guilty to his criminal charge. The Woodcock Road property, estimated to be worth $250,000, was unencumbered, and therefore acquired along with the 3268 Route 212 property for essentially nothing. These two properties hastily transferred to Appellant the day before Mesko's guilty plea had a combined value of $515,000. Therefore, viewing the entirety of the dealings between the

11

parties, there can be no doubt that reasonably equivalent value was not provided by Appellant even assuming the $200,000 line of credit constitutes consideration. Thus, reasonably equivalent value was not provided to Mesko, satisfying the element required by Sections 5104(a) and 5105.

### 3.) Mesko Reasonably Should Have Believed He would Incur Debts Beyond His Ability to Pay

12 Pa.C.S. §5104(a)(2)(ii) requires that the debtor have "believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

First, Mesko made the transfers of the property the day before he was pleading guilty to a criminal charge that ultimately led to his imprisonment for a term of 5-15 years. A reasonable person in Mesko's circumstances would have believed that he faced potential civil liability to the victim of his crimes. Appellee initiated his civil suit in April 2011, approximately six months after Mesko's guilty plea and two months after his incarceration.

Furthermore, Mesko stated that he had no savings accounts and last had a checking account prior to his incarceration in February 2011. This checking account was transferred to Appellant. Mesko Deposition Transcript, pp. 8-9, 25. Additionally, after the transfer of the properties to Appellant, Mesko was left with only a cabin located in Pike County. Mesko Deposition Transcript, pp. 64-65. Aside from the debts Mesko reasonably could have believed he would incur from the victim of his crimes, Mesko also had taxes and other fees associated with the cabin which was still retained in his name. Nonetheless, Mesko retained no bank accounts nor any interest in his landscaping business. Thus, Mesko either knew or reasonably should have believed that he would be unable to pay these costs associated with the cabin. In fact, the cabin was ultimately sold at sheriff's sale because Mesko failed to pay the property taxes. Mesko Deposition Transcript, p. 65.

12

Therefore, Mesko reasonably should have believed that he would incur debts beyond his ability to pay as they became due, and nonetheless, he made the property transfers to Appellee, satisfying this element of Section 5104(a)(2)(ii).

### 4.) Mesko Became Insolvent as a Result of the Transfers

Similar to Section 5104's requirement that the debtor believed or reasonably should have believed he would incur debts beyond his ability to pay as they became due, 12 Pa.C.S. §5105 requires that the debtor was insolvent at the time of the transfer or the debtor became insolvent as a result of the transfer. "A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." 12 Pa.C.S. §5102(a). Further, a debtor is presumed to be insolvent where the debtor "is generally not paying the debtor's debts as they become due . . . . This presumption shall impose on the party against whom the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence." 12 Pa.C.S. §5102(b).

Mesko's debts included his personal liability to Appellee, a $500,000 stipulated judgment. Mesko admitted that after the transfers, he had no valuable assets in his name. He possessed no saving or checking accounts, sold his interest in his landscaping company to Glenn Jackson, and the only property he retained after the transfer of the two properties to Appellant was the cabin in Pike County. Mesko Deposition Transcript, pp. 8-9, 64-65. Mesko's $500,000 debt to Appellee was greater than all of the assets Mesko owned subsequent to the transfer of the properties. Furthermore, Mesko was unable to pay the tax liability of the cabin property, which led to the loss of the property through sheriff's sale. Thus, Mesko paid neither the $500,000 judgment nor the taxes on the cabin property as they became due. This created a presumption of insolvency requiring the party against whom it was directed, Appellant in this matter as the third

13

party recipient of the transferred property, to prove the nonexistence of insolvency was more probable than its existence. Appellant failed to present any evidence to prove the nonexistence of insolvency. Furthermore, the two transferred properties, valued at a combined $515,000, had sufficient value to compensate Appellee for the $500,000 judgment. Thus, Mesko's insolvency was the result of the transfers of the two properties satisfying the final element of Section 5105.

### 5.) Appellant Failed to Provide Support for the Defense of Laches

Appellant's Statement of Matters Complained of Number 5 raises the defense of laches as a defense to Appellee's cause of action. Appellant failed to present the basis for its claim to this Court. We note however that UFTA, 12 Pa.C.S. §5109(2) provides that a cause of action with respect to a fraudulent transfer is extinguished unless the action is brought "under section 5104(a)(2) or 5105 (relating to transfers fraudulent as to present creditors), within four years after the transfer was made or the obligation was incurred." The transfers of the properties in this matter occurred on October 12, 2010 and Plaintiff initiated the cause of action via writ of summons on May 3, 2013. Therefore, the cause of action was timely filed pursuant to the statutory four (4) year standard.

Furthermore, the equitable defense of laches "requires not only an unjustified delay, but also that the opposing party's position or rights be prejudiced as a result of that delay." Class of Two Hundred Admin. Faculty Members of State Colleges in Com., by Reeser v. Scanlon, 466 A.2d 103, 105 (Pa. 1983). The $500,000 stipulated judgment obtained by Appellee in the underlying civil action was not indexed in the Lehigh County Court of Common Pleas until December 14, 2012. Approximately five (5) months later, Appellee initiated the instant action to collect upon said judgment. Appellant failed to present evidence to support a meritorious defense through the laches doctrine.

14

## C. The Money Judgment Remedy was Proper under the UFTA

This Court's February 7, 2014 Order granted Appellee's Motion for Summary Judgment as to Counts II and III of Appellee's Complaint and directed the Prothonotary to enter judgment against Appellant in the principal amount of $315,000. Appellant argues that the UFTA does not permit the recovery of money judgments. We address Appellant's contention herein.

12 Pa.C.S. §5107 provides various remedies available to creditors if a transfer is proved fraudulent. These include avoidance of the transfer, attachment of the asset, injunction against further disposition by a debtor or transferee, appointment of a receiver, and any other relief the circumstances may require. We also note that 12 Pa.C.S. §5108(b) and (c) permit the recovery of a judgment for the value of an asset(s) transferred against the first transferee of the asset. Thus, Appellant's contention that the UFTA does not permit the recovery of money judgments is incorrect. Furthermore, the UFTA under Section 5107(a)(3)(iii) provides the court with the discretion to award any relief the circumstances require. See Kraisinger v. Kraisinger, 34 A.3d 168, 175 (Pa. Super. 2011) (finding no abuse of discretion where the trial court awarded debtor's former counsel $40,026.13 in satisfaction of a judgment after finding the underlying property transfer to be fraudulent).

Although not specifically raised as an issue, we offer some reasoning in regards to the $315,000 amount awarded to Appellee. 12 Pa.C.S. §5108(c) states that a money judgment "must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." The Woodcock Road property was valued to have equity in the amount of $250,000 at the time of transfer. The Route 212 property was valued in the amount of $265,000 at the time of transfer and encumbered by a $200,000 line of credit, leaving a

15

remainder of $65,000 in equity. Thus, the combined equity value of the properties, $315,000, was awarded to Appellee.

## II. This Court properly ruled upon Appellee's Motion for Summary Judgment and Appellant's Motion to Vacate considering that all essential parties to the action were named by Appellee.

Appellant argues in his sixth through ninth Matters Complained of on Appeal that this Court erred in holding that Michael Mesko, Glenn Jackson, and Mesko Industries were not indispensable parties. These contentions will be discussed collectively below.

Pa.R.C.P. §1032 dictates that "whenever it appears by suggestion of the parties or otherwise that . . . there has been a failure to join an indispensable party, the court shall order . . . that the indispensable party be joined, but if that is not possible, then it shall dismiss the action." Generally, this Court will find that a party is indispensable to an equity action when:

> . . . he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience. That is to say, his presence as a party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights.

Mechanicsburg Area Sch. Dist. v. Kline, 431 A.2d 953, 956 (Pa. 1981).

The Pennsylvania Supreme Court has offered at least four factors that a court should consider before making a determination as to the existence of an indispensable party. These include (1) whether an absent party has a right/interest related to the claim, (2) identifying that right/interest, (3) establishing whether that right/interest is essential to the merits of the case, and (4) ensuring that justice can be done without violating the due process rights of the absent party. Id. "All [these] considerations . . . are themselves conclusions of law to be made by the court after due consideration. Bare factual allegations of a party are not dispositive for the issues underlying the indispensable party question." Id. at 958 n.8.

16

To establish whether a right or interest is essential to the merits of the case requires a court to conduct a further inquiry. An absent party's asserted right must be "so essential to the merits of the question,' such that it must be 'so much affected by the decree, that the court cannot proceed to a final decision of the cause, until they are parties." Id. at 97, citing Russell v. Clark's Ex'rs, 11 U.S. 69, 98 (1812). The Pennsylvania Supreme Court has further interpreted this question of essentialness to revolve around the directness of the connection between the asserted right and the particular case. In Columbia Gas Transportation Corp. v. Diamond Fuel Co., the Court held that "an indispensable party is one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights, and his absence renders any order or decree of court null and void for want of jurisdiction." 346 A.2d 788, 789 (Pa. 1975). The rights and interests asserted by Michael Mesko, Glenn Jackson, and Mesko Industries do not meet the abovementioned standard.

## A. Michael Mesko

In his deed conveying the properties at issue to Appellant, Michael Mesko did not retain any legal interest in those properties. Appellant alternatively claims that, as evidenced in Mesko's deposition testimony, Mesko did retain an option to repurchase the properties as well as the promise of future employment on the properties after his eventual release from incarceration. However, Pennsylvania law regarding contract interpretation is well-settled as follows:

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. . . . When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.

Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006) (citations omitted).

Mesko transferred each of the properties at issue to MJC Industries, Inc. in exchange for $1.00 by deeds dated October 12, 2010, whereupon he did not retain any interest to the

17

properties. The terms of the contract are clear and unambiguous. There is no clause or any other indication that Mesko reserved a right for himself in the properties. As such, Mesko cannot satisfy even the first factor laid out by the Pennsylvania Supreme Court, that he has an existing right or interest.

Appellant further offers that Mesko is an indispensable party due to his status as the transferor of the properties in this fraudulent transfer, claiming that a transferor must always be named in any action by a creditor. However, there is no support for this position in Pennsylvania law. In Temtex Products, Inc. v. Kramer, 479 A.2d 500 (Pa. Super. 1984) the Superior Court was presented with a situation where a creditor attempted to seek relief from a fraudulent transfer engaged in by a debtor. The debtor, who was the fraudulent transferor, sought a stay of the action as a result of his pending bankruptcy proceeding; however, Superior Court denied his motion. The Court reasoned that "[t]he Bankruptcy Code does not bar proceedings in a case in which the bankruptcy debtor has no interest in the property at issue." Id. at 509. We find this reasoning persuasive, as Superior Court implicitly held that the transferor in a fraudulent transfer action has no interest in transferred property after completion of the transfer.

We finally look to the Fraudulent Transfer Act itself to find support for our ruling that Mesko is not an indispensable party. 12 Pa.C.S. § 5107(a) specifically provides, "[i]n an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable law.

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

    (i) an injunction against further disposition **by the debtor or a transferee, or both, of the asset transferred or of other property;**

18

(ii)     appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii)    any other relief the circumstances may require." (emphasis added).

The statute clearly authorizes a creditor to seek damages from the original transferor OR the transferee OR the asset transferred. The statute does not mandate that a transferor must be named in a recovery action, and on its face, seems to suggest otherwise.

Additionally, and perhaps more significantly, the Comments to the statute offer further insight. In particular, Comment (4) reads: "As under the Uniform Fraudulent Conveyance Act, a creditor is not required to obtain a judgment against the debtor-transferor or to have a matured claim in order to proceed under subsection (a)." We observe that if a transferor were a necessary party to a fraudulent transfer action, it would be superfluous for the legislature to authorize a creditor to proceed without a judgment against a party that must be joined in the underlying action. Appellant's main argument for Mesko being an indispensable party would create a logical incongruity within the statute itself, and therefore, it is without merit. By allowing a creditor to proceed under the Act without obtaining a prior judgment against the transferor, the legislature asserts that such a party is not indispensable to the action. As a result of this finding, Mesko is not an indispensable party.

### B.  Glenn Jackson

Glenn Jackson likewise fails to meet the standard to be considered an indispensable party as he does not have a direct right implicated in this litigation. Appellant stresses to this Court that as the owner and sole shareholder of MJC Industries, Jackson has a corresponding interest in the outcome of this case. Appellant further claims that this right stems from the losses that Jackson stands to bear as a result of this Court's potential entry of summary judgment against MJC Industries, his company. However, even if we accept Appellant's arguments, this right does not

19

satisfy the third factor provided by the Pennsylvania Supreme Court, that any right must be essential to the merits of the case.

In order to be essential, Jackson's right must be so "directly connected with and affected by litigation that he must be a party of record to protect such rights." The Superior Court, in deciding a case involving a shareholder's derivative action against the directors of its wholly owned subsidiary, provided the following in dicta: "An injury to a corporation may, to be sure, result in injury to the corporation's stockholders. Such injury, however, is regarded as "indirect", and insufficient to give rise to a direct cause of action by the stockholder." Burdon v. Erskine, 401 A.2d 369, 370 (Pa. Super. 1979). While the case at bar involves a different factual scenario than Burdon, any injury that Jackson may suffer as a result of the present litigation would necessarily result from injury to MJC Industries. As such, Jackson's interest would be derivative of his holdings in MJC Industries, which stands in stark contrast to having a direct interest implicated in the litigation.

Furthermore, we observe that the Superior Court directly addressed Jackson's potential status as an indispensable party in its May 18, 2015 Memorandum Opinion, writing:

> It would be unusual, to say the least, that Jackson would be an indispensable party solely based upon his ownership of MJC. On its face, this would run counter to one of the purposes of the corporate form: To create a separate legal entity conferring upon its owner(s) the substantial benefit of protection from personal liability. Moreover, one need ponder only a moment to recognize that, were we to treat owners of corporate parties to litigation as indispensable to any litigation affecting the corporation, we would wreak havoc on the roles of shareholders in corporations subject to suit.

Super. Ct. Memorandum Opinion, 05/18/15, p. 15. In remanding the case to this Court, the Superior Court qualified its view, adding:

> However, we cannot say with certainty that factual matters not of record would reveal complications to this general truth such that Jackson or Mesko would emerge as indispensable parties to this litigation. This is especially true inasmuch as the

20

parties' personal and professional connections clearly colored the series of transactions underlying this dispute. Moreover, the parties squarely contest consideration in any dispute under the FTA, including asserting that Jackson's allegedly uncompensated work with and or for Mesko for over a year before the transfers, itself, constituted consideration well in excess of the documented $1.00 sale price of the two parcels at issue. . . . We direct the trial court to evaluate this issue in the first instance.

Super. Ct. Memorandum Opinion, 05/18/15, p. 16.

We follow the Superior Court's guidance in declaring Jackson an indispensable party to the action, and we further find that the factual matters particular to this case do not reveal sufficient complications to justify this Court reaching a different conclusion. At oral argument and in its pleadings, Appellant argued that Jackson performed uncompensated services for Mesko that amounted to consideration in excess of the $1.00 listed on each deed to the transferred properties. However, a closer look at the facts of record reveal no specific evidence in support of this claim. Jackson avers that he performed such uncompensated work in his deposition, yet is unable to confirm any of the exact services performed or the estimated value of such services. Additionally, Appellant's counsel discussed these services at oral argument, but no supporting evidence was ever placed in the record. As such, there is nothing in the record that can lead this Court to depart from the guidelines provided by the Pennsylvania Supreme Court, guidelines that result in Jackson not having a right essential to the merits of the case such that he would need to be a party to protect them. Therefore, Jackson is not an indispensable party[4].

### C. Mesko Landscaping

Mesko Landscaping also does not meet the standards necessary to be an indispensable party in the case. Appellant alleges that the sole interest belonging to Mesko Landscaping that is

---

[4] We cannot ignore the glaring conflict within Appellant's counsel's argument presented at oral argument, where he advocated that another of his clients, Glenn Jackson, is an essential party who should be joined in this litigation. While seated beside Jackson at counsel table, counsel attempted to justify the facially apparent conflict by claiming that Jackson was not his client during oral argument, which we find to be perplexing.

21

implicated in this litigation stems from the fact that its inventory is located on the property. Even taking Appellant's averments as true, this interest is not essential to the merits of the claim. Essentialness necessarily involves the interest in question being so directly connected to the case that the party must be present to protect those interests. However, Appellee does not seek relief from the inventory belonging to Mesko Landscaping, but rather, solely from the property itself. The property, per the October 12, 2010 deed, belongs entirely to MJC Industries. Mesko Landscaping has no right or interest in this property, and any inventory that it may have that is present on the property is not implicated in this litigation. Therefore, Mesko Landscaping is not an indispensable party to this action.

## CONCLUSION

For the foregoing reasons, this Court perceives that the issues of which Appellant has complained in this appeal are without merit, and that this Court's June 21, 2016 Order was supported by both the law and the record in this case. We respectfully request the Superior Court to affirm this Court's decision.

BY THE COURT:

August 4, 2016
Date

WALLACE H. BATEMAN, JR. J.

22